1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

STEPHEN BUSHANSKY,

7

Plaintiff,

Case No.  12-cv-01597-JST

8

v.

**ORDER DIRECTING PARTIES TO
DEVELOP A PROPOSED NOTICE
PLAN**

9

10

SAMUEL ARMACOST, et al.,

Defendants.

Re: ECF Nos. 36, 41, 42, 44–46

11

12          Before the Court is Plaintiff's request to voluntarily dismiss this derivative action without

13   prejudice and without notice to shareholders.  ECF No. 36.

14   **I.      BACKGROUND**

15          Plaintiff Stephen Bushansky filed this derivative shareholders' suit on behalf of Chevron

16   Corporation challenging Chevron's adoption of a forum-selection bylaw and alleging breach of

17   duty claims against Chevron's board members.  Compl., ECF No. 1 ¶¶ 3–5.  Judge Alsup stayed

18   this action on August 9, 2012, pending the resolution of a shareholder class action filed in the

19   Delaware Court of Chancery, Boilermakers Local 154 Retirement Fund v. Chevron Corp., 73

20   A.3d 934 (Del. Ch. 2013).  ECF No. 25.  On June 25, 2013, the Court of Chancery dismissed with

21   prejudice two of the claims in the parallel suit, which alleged that Chevron's forum-selection

22   clause violated Delaware and federal law.  Boilermakers Local, 73 A.3d at 963.  The Delaware

23   plaintiffs appealed the Chancery Court's decision, but subsequently dismissed their appeal.

24   Thereafter, Plaintiff Bushansky moved to voluntarily dismiss this action.  ECF No. 36.  In his

25   motion, Bushansky sought authorization to dismiss without prejudice and without providing the

26   notice to shareholders required by Federal Rule of Civil Procedure 23.1(c), which governs the

27   settlement, dismissal, and compromise of derivate actions and requires notice to shareholders.  Id.

28          The parties have addressed the question of whether the Court is authorized to grant

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff's request to deviate from Rule 23.1(c) in two sets of supplemental briefing.  ECF Nos. 41,

2    42, 44–46.

3    **II.       LEGAL STANDARD**

4              Rule 23.1(c) states that "[a] derivative action may be settled, voluntarily dismissed, or

5    compromised only with the court's approval.  Notice of a proposed settlement, voluntary dismissal

6    or compromise must be given to shareholders or members in the manner that the court orders."

7    Fed. R. Civ. P. 23.1(c).  The notice requirement ensures that "dismissal of the derivative suit is in

8    the best interests of the corporation and the absent stockholders."  Papilsky v. Berndt, 466 F. 2d

9    251, 258 (2d Cir. 1972) (citing Norman v. McKee, 431 F. 2d 769, 774 (9th Cir. 1970), cert.

10   denied, 401 U.S. 912 (1971)).  "More specifically, notice and court approval of settlements under

11   Rule 23.1 discourage private settlements under which the plaintiff-stockholder and his attorney

12   profit to the exclusion of the corporation and nonparty stockholders."  Papilsky, 466 F. 2d at 258

13   (citations omitted).  In this way the notice requirement guards against collusive settlement

14   practices.  Id.  Courts also recognize the need for notice to prevent "dismissals which are due

15   primarily if not entirely to the named plaintiff's change in heart about prosecuting the action."

16   Cramer v. General Telephone & Electronics Corp., 582 F. 2d 259, 269 (3d Cir. 1978).  Finally,

17   notice is required because "if the dismissal were to occur after the statute of limitations had run,

18   the dismissal would bar any prosecution of the claim against the corporate officials."  Id.; see also

19   Papilsky, 466 F.2d at 258 (citing McLaughlin, Capacity of Plaintiff-Stockholder to Terminate a

20   Stockholder's Suit, 46 Yale L.J. 421, 428 (1936)).

21            While the language of Rule 23.1(c) suggests that notice is mandatory, courts have

22   exercised their discretion to allow parties to dispense with the notice requirement in at least three

23   circumstances: when a claim is dismissed after litigation on the merits, Papilksy, 466 F. 2d at 258–

24   59, when a claim is dismissed because it has become moot, Weiss v. SCM Corp., No. 85 CIV.

25   7569 (JFK), 1986 WL 7782, at *1–2 (S.D.N.Y. July 9, 1986); and when absent class members will

26   not be prejudiced by the lack of notice, and the expense of giving notice would be unduly

27   burdensome to the named plaintiff.  See, e.g., Sheinberg v. Fluor Corp., 91 F.R.D. 74 (S.D.N.Y.

28

1    1981).

2    **III.    ANALYSIS**

3        Bushansky contends that dismissal without notice is appropriate because: (1) the

4    underlying claims were dismissed on the merits in the parallel Delaware litigation; (2) the

5    underlying claims are moot; (3) Plaintiff lacks standing to pursue the litigation because he has sold

6    his stock; and (4) because Chevron stockholders will not be prejudiced and the cost of notice is

7    prohibitive.  ECF No. 42 at 2.

8        **A.    Standing**

9        After filing his notice of dismissal, Plaintiff sold his Chevron stock.  ECF No. 39 at 1.  He

10   now contends that he is not required — or even permitted — to give notice because he lacks

11   standing to pursue his claim further, and thus the Court lacks jurisdiction to order notice.

12       Plaintiff relies on Lewis v. Anderson, 477 A.2d 1040, 1046 (Del. 1984),[1] for the well-

13   established proposition that a plaintiff must be a stockholder throughout the litigation to maintain

14   standing.  But Anderson's holding is not relevant to the issue presented here: whether a plaintiff

15   can avoid Rule 23.1(c)'s notice requirement by selling his stock after filing for voluntary dismissal

16   of his derivative suit.

17       The court in Lewis v. Knutson, 699 F. 2d 230, 240 (5th Cir. 1983), addressed this very

18   issue.  There, the plaintiff sold his stock, leading to dismissal of his derivative suit for lack of

19   standing.  Id.  On this ground, the plaintiff appealed the trial court's order to provide notice.  Id.

20   Nevertheless, the Knutson court held that Rule 23.1(c) required notice to other shareholders

21   despite the plaintiff's lack of standing personally to maintain the suit.  Id.; see also  In re Extreme

22   Networks, Inc. Shareholder Derivative Litigation, 573 F. Supp. 2d 1228, 1237 (N.D. Cal. 2008)

23   (holding that although a named plaintiff cannot proceed with a derivative action after selling his

24

25   ————————————————

26   [1]In Lewis, the Court was deciding whether a pre-merger shareholder had standing to bring a post-
     merger suit against a company in which it no longer had a direct ownership interest.  Id.  It was in
27   that context that the court held that "a derivative shareholder must not only be a stockholder at the
     time of the alleged wrong and at the time of commencement of suit but that he must also maintain
28   shareholder status throughout the litigation."  Id.

United States District Court
Northern District of California

stock, "another qualified shareholder can intervene on the grounds that their rights are no longer

represented"); First Hartford Corporate Pension Plan & Trust v. U.S., 54 Fed. Cl. 298, 303 (Fed.

Cl. 2002) (requiring notice where lead plaintiff had sold shares and lacked standing to pursue

derivative suit).

Indeed, permitting a plaintiff to evade the notice requirement by selling his stock would

defeat the purpose of the rule, which seeks to discourage collusive settlements and provide other

shareholders the opportunity to continue a potentially meritorious suit.  See Cramer, 582 F.2d at

268–69; Papilsky, 466 F. 2d at 258.  Plaintiff cannot avoid his responsibility to provide notice by

dint of his stock sale, nor is the Court divested of power to require notice pursuant to Rule 23.1(c).

**B.      Dismissal on the Merits and Mootness**

Judge Alsup stayed Plaintiff's action pending resolution of a similar suit in the Delaware

Chancery Court, Boilermakers Local 154 Retirement Fund v. Chevron Corp., 73 A.3d 934 (Del.

Ch. 2013) judgment entered sub nom. Boilermakers Local 154 Ret. Fund & Key W. Police & Fire

Pension Fund v. Chevron Corp., No. 7220-CS, 2013 WL 3810127 (Del. Ch. June 22, 2013).  In

staying Plaintiff's action, Judge Alsup concluded that Plaintiff's claims were a "'repackaging' of

the Delaware action's challenges," which "put[] forth nearly identical factual and legal issues."

ECF No. 25 at 9.  Accordingly, he stayed in favor of the state court action pursuant to Colorado

River Water Conservation Dist. v. U.S., 424 U.S. 800, 814–15.  Subsequently, the Chancery Court

agreed to decide the purely legal question of the validity of the forum selection by-laws — Counts

I and IV of the Delaware plaintiffs' complaint — without consideration of the other claims,

including fiduciary duty claims.  Boilermakers Local, 73 A. 3d at 945–47.  After briefing and a

hearing, the Chancery Court dismissed Counts I and IV with prejudice.  Id. at 963.  The dismissal

was entered as a final judgment pursuant to Court of Chancery Rule 54(b).  No. 7220-CS, 2013

WL 3810127 (Del. Ch. June 22, 2013).  The Delaware plaintiffs initially appealed the final

judgment, but subsequently dismissed the appeal.

Bushansky contends that "[t]he decision in the Delaware Action constitutes a decision on

the merits" and thus relieves him of his duty to provide notice to other Chevron shareholders of

United States District Court
Northern District of California

4

1    voluntary dismissal of this action.  ECF No. 42 at 3.  Relatedly, he contends that the Delaware

2    decision renders this action moot, and likewise permits dismissal of this suit without notice.  Id. at

3    4.

4             In support of his contention that a claim that has been dismissed on the merits does not

5    require notice, Plaintiff points to the Papilsky court's observation that

6
            [l]itigation upon the merits substantially reduces the opportunities
7            for collusion between the plaintiff-stockholder and the defendants.
            A contest upon the merits is presumed to indicate that the plaintiff-
8            stockholder vigorously prosecuted the claim on behalf of the
            corporation. Accordingly, the Rule 23.1 notice provisions do not
9            apply to dismissals following litigation upon the merits.

10

11   466 F.2d at 258–59.  However, in Papilsky the court held that shareholder notice *was* required

     because the claims at issue had not yet been decided on the merits.  Id. at 259.  The court reasoned
12
     that "notice of a proposed dismissal . . . will protect the corporation and absent stockholders from
13
     a plaintiff-stockholder who, for reasons unrelated to the merits of the corporate claim, chooses not
14
     to" proceed with his claim.  Id. at 259.  For example, the court observed that "a plaintiff-
15
     stockholder generally finances the prosecution of the derivative suit out of his own pocket" and
16
     may decide "that the financial risk is too great" to continue with the suit.  Id.  It concluded that
17
     "[r]equiring notice under Rule 23.1 in these situations affords nonparty stockholders an
18
     opportunity to intervene to prosecute the suit to its completion."  Id.
19
             Here, only two issues were decided in the parallel litigation.  While those issues
20
     unquestionably bear on this case, the fiduciary duty claims remain live in this litigation and un-
21
     addressed by the Delaware court.[2]  See Boilermakers Local, 73 A.3d at 945; Compl. ¶ 5.  Thus,
22
     notice would protect the interests of absent shareholders by affording them "an opportunity to
23
     intervene to prosecute the suit to its completion" if they choose to do so.  Papilsky, 466 F.2d at
24

25

26   [2] Although Plaintiff now contends that the Delaware action moots this action, in his Opposition to
     Defendant's Motion to Stay, Plaintiff argued vigorously that his suit was not parallel to the
27   Delaware action because it sought relief on behalf of different parties, was a derivative suit as
     opposed to a class action, alleged different claims, and sought different relief.  ECF No. 20 at 5.
28

*(left margin)* United States District Court   Northern District of California

1   259.

2        Accordingly, the dismissal of Counts I and IV in the Delaware suit does not obviate the

3   need for notice pursuant to Rule 23.1(c).  In so holding, the Court does not take a position on the

4   strength of the remaining claims, but merely observes that not all claims have been decided on the

5   merits, and thus it would be inappropriate to waive the notice requirement on this ground.

6        This same analysis applies to Plaintiff's contention that notice is not required because the

7   claims are now moot.  Even accepting the premise that the Chancery Court's decision on the

8   purely legal claims rendered those claims moot, there are nevertheless remaining claims which

9   could be tried on the merits.  Accordingly, the Court declines to waive Rule 23.1(c)'s notice

10  requirement on grounds of mootness.

11       **C.    Absence of Prejudice and Expense to Plaintiff**

12       Plaintiff argues that notice is not required here because other stockholders will not be

13  prejudiced by lack of notice and the costs of notice are prohibitive.  ECF No. 42 at 6.

14       **1.    Prejudice**

15       First, Plaintiff contends that other shareholders will not be prejudiced because "the

16  Delaware Action has already concluded that Chevron's Exclusive Forum Bylaw is valid and

17  unassailable," which determination "precludes collateral challenges."  Id.  However, as this Court

18  has already noted, the Delaware court did not decide all of the claims presented in the instant case.

19       The Ninth Circuit, in evaluating pre-certification class action dismissals under the parallel

20  Rule 23, has identified three factors to determine whether absent plaintiffs will be prejudiced by

21  lack of notice, and accordingly whether notice is required: (1) whether "the notice requirement

22  protects a defendant by preventing a plaintiff from appending class allegations to her complaint in

23  order to extract a more favorable settlement;" (2) whether notice will "protect[] the class from

24  objectionable structural relief, trade-offs between compensatory and structural relief, or depletion

25  of limited funds available to pay the class claims;" and, (3) whether "notice of dismissal protects

26  the class from prejudice it would otherwise suffer if class members have refrained from filing suit

27  because of knowledge of the pending class action."  Diaz v. Trust Territory of Pacific Islands, 876

28

United States District Court
Northern District of California

1    F. 2d 1401, 1408–09 (9th Cir. 1989) (citations and emphasis omitted).

2          In Diaz the Ninth Circuit reversed the district court's determination that lack of notice had

3    not been prejudicial to absent class members, holding that "the likelihood that members of the

4    class had knowledge of the litigation, and the short time before expiration of the statute of

5    limitations made prejudice likely."   Id. at 1411.   With respect to the question of whether absent

6    class members had knowledge of the litigation, the Diaz court reiterated the interveners'

7    observation that "many courts have assumed the existence of reliance based upon the mere filing

8    of the action and the possibility of publicity resulting from the filing."   Id. at 1410 (citations

9    omitted).   In reaching its conclusion, the court further noted that "[v]ery few cases involving a

10   voluntary pre-certification dismissal have actually held notice not required."[3]   Id.

11         In cases where courts have excused notice, they have done so only in very limited

12   circumstances.   In Sheinberg v. Fluour Corp., 91 F.R.D. 74, 75 (S.D.N.Y. 1981), the court excused

13   notice "where there was no danger that the statute of limitations would bar assertion of claims by

14   other class members," and where the plaintiff's decision to dismiss was "based solely upon the

15   conclusion . . . that [the] action [was] without merit."   The Sheinberg court was careful to note that

16   its holding was limited to "the special circumstances of [that] case."   Id.   Other courts have

17   similarly excused notice where there was no indication that potential class members had

18   knowledge of the suit because there had been no media coverage or publicity regarding the

19   litigation, and there was no other potential for prejudice. See Tepper v. Western Inv. Real Estate

20   Trust, No. 92-2746 JPV, 1993 U.S. Dist. LEXIS 2148, at *3–4 (N.D. Cal. Feb. 23, 1993); Hockert

21   Pressman & Flohr Money Purchase Plan v. American President Cos., No. 94-1449, 1995 U.S.

22   Dist. LEXIS 17608, at *3 (N.D. Cal. Nov. 20, 1995).

23         Considering the factors set forth in Diaz, this Court declines to depart from the notice

24

25   [3]Although the class action rubric for prejudice is helpful in the Rule 23.1(c) notice context, not
     every aspect of the voluntary dismissal of class actions applies directly to derivative actions.  For
26   example, Plaintiff's reliance on decisions finding a low risk of prejudice are inapposite, as they
     arise in the class action context where, as those courts observed, the pre-certification dismissal of
27   the suit does not bind any absent class members.

28

United States District Court
Northern District of California

1    requirement.[4]  Most importantly, there is a danger that, with the dismissal of this suit, the statute of

2    limitations on the remaining breach of duty claims may have run.  See Compl. ¶ 38 (noting that

3    the "Bylaw was . . . adopted on September 29, 2010"); In re Tyson Foods, Inc., 919 A. 2d 563,

4    584(Del. Ch. 2007) (Pursuant to 10 Del. C. § 8106 "A three-year statute of limitations applies to

5    breaches of fiduciary duty . . . The statute of limitations begins to run at the time that the cause of

6    action accrues, which is generally when there has been a harmful act by a defendant.").

7            The parties vigorously dispute the application of the statute of limitations.  The analysis is

8    complicated because the 2010 bylaw upon which this action was premised was superseded by an

9    amended bylaw in 2012, and because the statute may have been tolled by litigation.  See The Dow

10   Chemical Corp. v. Blanco, 67 A.3d 392, 394 (Del. 2013) (citing American Pipe & Construction

11   Co. v. Utah, 414 U.S. 538 (1974)).  The Court need not decide these questions now; the Court

12   should wait for a potential intervenor to address the contours of the limitations period.  For present

13   purposes, it is sufficient for the Court to conclude that a danger exists that the statute of limitations

14   has already or will shortly run on certain of the derivative claims.  Indeed, the latest estimate

15   provided by Plaintiff of the expiration of the limitations period is March 2015, less than one year

16   from now.  This danger poses a likelihood of prejudice to shareholders that the Court must take

17   into consideration in evaluating the notice requirement of Rule 23.1(c).

18           In addition, as Plaintiff points out in his brief, there has been some media coverage

19   surrounding the legal issues implicated by Chevron's forum selection bylaw, and shareholders

20   were apprised of the bylaw controversy via proxy statements.  ECF No. 42 at 7–8.  Accordingly,

21   the possibility remains that Chevron shareholders have relied on the present suit to vindicate their

22   rights, and absent notice of its termination, their rights may not adequately be protected.

23

24

25   _____

26   [4]The Court notes that the Diaz factors were set forth in the context of a pre-certification class
     action where the possibility of prejudice to class members is diminished because their rights are
     not bound by pre-certification dismissal.  See id.  Unlike a pre-certification class action suit,
27   "[s]pecial caution is warranted in the context of derivative suits" because the "plaintiff is affecting
     a right that belongs to the corporation."  7C Wright & Miller § 1839 at 196.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.   Prior Notice

Second, Plaintiff contends that notice has already occurred, thus additional notice is unnecessary.  ECF No. 42 at 7.  To that end, Plaintiff notes that "publication of Chevron's 2012 proxy — in conjunction with the subsequent investor information published in connection with that proxy — suffices to have provided actual notice of the Exclusive Forum Bylaw issue." Id. Plaintiff concludes that "[a]lthough the proxy material did not disclose the pendency of any litigation shareholders were apprised of the issue and were . . . free to take any action they saw fit." Id.  Moreover, Plaintiff observes that after the Delaware decision, the Boardroom Channel published a video interview with the Corporate Secretary and Chief Governance Officer of Chevron, which "addressed the Exclusive Forum Bylaw issue against the decision of the Delaware Action." Id. at 8.

The notice that Plaintiff describes is not the notice at issue in this action.  Plaintiff does not contend, nor could he, that shareholders have been apprised of the impending dismissal of this suit.  Rather, he indicates that shareholders were made aware of the forum selection bylaw, and potentially, the attendant legal action in Delaware.  As the Court noted above, the fact that there has been media coverage of the forum selection bylaw makes prejudice more likely, not less.  That shareholders may have been notified of the adoption of the bylaw weighs against Plaintiff's argument that no notice of the voluntary dismissal is required, because it increases the likelihood that shareholders were aware of the ongoing litigation, and thus the likelihood that they relied upon Plaintiff's suit to protect their interests.

### 3.   Expense

Finally, Plaintiff argues that "notice to all Chevron stockholders in this circumstance would be prohibitively expensive, whether by mail or publication."  ECF No. 42 at 6.  In support of his argument, Plaintiff observes that "publication of a notice in national newspapers is a very expensive proposition running into the tens of thousands of dollars" and "individual mail notice to the millions of Chevron stockholders is likewise prohibitively expensive." Id. at 6–7.

These, however, are not the only options for providing notice.  Rule 23.1 permits notice to be given "in the manner that the court orders."  Fed. R. Civ. P. 23.1(c).  Defendant suggests an

1    alternative form of notice, which would entail posting "a link on Chevron's Investor Relations

2    website and the filing of an 8-K with the SEC." ECF No. 41 at 4.  Plaintiff, likewise, proposes that

3    if notice is required it "should be included on Chevron's website for a period of at least two

4    weeks, or in the Company's next quarterly report, and/or in a press release issued by Chevron

5    which, as a matter of course, gets picked up and disseminated by financial news sources."  Using

6    these suggested forms of notice would potentially accomplish the purposes of the notice

7    requirement, but save considerable expense over the alternatives of direct mail or purchasing

8    advertising space in a national newspaper.  To that end, the Court considers whether such notice

9    would be sufficient to reach the majority of interested stockholders.  See 7C Wright & Miller §

10   1839 at 201.

11          Other district courts have found comparable forms of notice sufficient to satisfy due

12   process.  See In re Rambus Inc. Derivative Litig., No. C 06-3513 JF (HRL), 2009 WL 166689, at

13   *2 (N.D. Cal. Jan. 20, 2009) (approving settlement where notice was published on company

14   website and in a press release carried on *Business Wire*, and filed in an 8-K with the Securities and

15   Exchange Commission);  In re MRV Communications, Inc. Derivative Litigation, No. 08-03800

16   GAF, 2013 WL 2897874, at *1 (C.D. Cal. June 6, 2013) (approving notice filed as an attachment

17   to a Form 8-K, published on company website, and published for one day in *Investor's Business

18   Daily*);  Feuer v. Thompson, No. 10-cv-00279 YGR, 2012 WL 665297, at *2–3 (N.D. Cal. Dec.

19   13, 2012) (approving notice by publication on company website, in an 8-K, and once in the *Wall

20   Street Journal* and *The New York Times*);  In re PMC-Sierra, Inc. Derivative Litig., No. 06-05330

21   RS, 2010 U.S. Dist. LEXIS 5818 at *4 (N.D. Cal. Jan. 26, 2010) (approving notice via filing with

22   the SEC, posting on company's website, and single day publication in the national edition of

23   *Investor's Business Daily*).  Moreover, these forms of notice were approved in the context of class

24   settlements — a context in which the potential for abuse is more substantial than in the case of a

25   voluntary dismissal.

26          Thus, the Court concludes that notice may be ordered absent the level of expense that

27   Plaintiff argues is great enough to justify departing from Rule 23.1(c)'s notice requirement.

28

United States District Court
Northern District of California

**D.      Dismissal with Prejudice**

Defendant contends that if "no new plaintiff emerges" after there has been an adequate opportunity to intervene, the Court should dismiss this case with prejudice.  ECF No. 41 at 5. Plaintiff agrees with this approach.  ECF No. 46 at 4.

**IV.      CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

1.      The parties shall meet and confer, and file a proposed notice plan to the Court, including proposed notice language and forms, within thirty days from the date of this Order.  The filing shall be designated on ECF as an administrative motion for issuance of notice.

2.      The proposed notice plan shall include the following elements: a link on Chevron's investor relations website that leads to a webpage to be displayed for a minimum of thirty days; an 8-K filing with the SEC; and a press release to be issued by Chevron.  The proposed notice plan shall inform the Court as to the time period the parties require to implement the plan, and propose a deadline for intervention.

3.      The Court will take the proposed notice plan under submission and order appropriate notice to shareholders.

4.      If no shareholder seeks to intervene during the notice period, Plaintiff shall file an administrative motion requesting that the Court dismiss this action with prejudice.

**IT IS SO ORDERED.**

Dated:  June 25, 2014

_____
JON S. TIGAR
United States District Judge